*J. E. Neal*, for appellant.

*G. G. Wright*, for appellee.

———o·o·o———

## BURTON v. EMERSON, SHIELDS & CO.

Where a purchaser, at a sheriff's sale, gives a receipt to the execution defendant in redemption of the land, according to the execution law in force at the date of the contract, and where such redemption payment and receipt are not denied by the purchaser, he is estopped from claiming title under that sa'e.

E., S. & Co. obtained judgment on a note dated December 20, 1842, on which *venditioni exponas* was issued April 8, 1846, and a levy and sale were made under the valuation law of 1843; held, that as the execution returned and the deed, showed that the sheriff exercised his powers and conducted the sale, exclusively under the valuation law after it had been repealed; and as the contract was made before that law took effect, the deed was *prima facie* void, and could impart no title.

The execution law in force at the time of a contract, enters into and becomes a part of the contract; and where such contract is enforced under execution sale, such sale should be conducted in harmony with the law of the contract, so as to leave the rights of parties unimpaired.

### Appeal from Dubuque District Court.

*Opinion by* GREENE, J. Action of right, to recover lot three hundred and fifty, in the city of Dubuque. Petition

*26

filed by John Burton, against James M. Emerson, John H. Emerson, and John G. Shields, claiming the right to the lot in fee simple.

The answer of defendants denies the averment of the petition, and alleges, in substance, that on October 28th, 1844, they purchased the lot at a sheriff's sale, by virtue of a writ of *fieri facius*, issued from a judgment rendered in the district court of Dubuque county, at the November term, 1842, in favor of Thomas McCraney, for the sum of $15 40, against John V. Berry ; that they paid for said lot the sum of forty dollars, and received from Geo. W. Cummings, as sheriff, a deed for the lots, which was filed for record, October 31, 1844.

The answer also alleges that the defendants, under the style of Emmerson, Shields and company, recovered a judgment in said court, against said Berry, for the sum of nineteen dollars, in May 1844 ; that on said judgment they sued out an execution upon which the land was levied, but the execution was returned for want of bidders ; that afterwards, April 8th, 1846, they sued out a writ of *venditioni exponas*, directed to said sheriff; that on the day of sale the lot failed to bring two-thirds of its appraised value, and defendants then offered to take the property at two thirds valuation, say $83.33, and they accordingly became the purchasers, and obtained a deed duly executed, and had the same recorded, May 23d, 1846.

To the answer, the plaintiff's reply admits the two executions and sales, and yet claims that plaintiff is the rightful owner of the lot, by virtue of a deed of conveyance, executed by John V. Berry, to him and his brother, Thomas Burton, for a full and valuable consideration, paid October 27th, 1845, and filed for record November 10th, 1845, and by virtue of a devise to him by said Thomas, who died before the commencement of this suit. The plaintiff's replication also alleges that the whole of the record in the execution sales shows that the defendants have no title by virtue of the sheriff sales.

By agreement, all the documents, records and deeds were to be used as evidence in the case. Upon these, under the state of pleadings above indicated, the court found for the defendants. According to the record before us, the lot was redeemed from the first execution sale, in accordance with the law in force at the date of the contract; as the money was receipted by the defendants, and the receipt and payment fully acknowledged, it follows that they acquiesced in Berry's redemption of the property; and by that act, under the law, are estopped from claiming title by virtue of their purchase under the McCraney judgment. That deed was, in effect, cancelled. The contract upon which the judgment was rendered, in favor of Emerson, Shields and company, was a note, dated December 29, 1842, being prior to the valuation law of 1843, and consequently that law was not applicable to this contract. This principle is settled by *Rue* v. *Wood*, 3 McLean, 575; *McCracken* v. *Hayward*, 2 Howard, 813; *Kenzie* v. *Bronson*, 1 ib., 311; laws of 1844, 7. According to these authorities, and the statute in force at the date of the execution and sale of 1844, the execution law in force at the time the contract was made, entered into and became a part of the contract.

The statute of 1844 fully revived the execution laws repealed by the valuation law, "so far as they relate to judgments heretofore or hereafter obtained, on contracts made prior to that time;" and indeed, so far as those prior contracts were concerned, those execution laws had not been repealed; for, as they entered into, and became a part of the contracts, they were, in reference to them, as irrepealable as the express stipulations in those contracts. It follows, then, that the sheriff should have sold the lot under the execution law in harmony with that of 1842; and that he had no legal power to make the sale under the valuation law of 1843, in matters calculated to impair rights under the contract. In every particular, it appears that the proceedings of the sheriff under the *venditioni exponas*, was in accordance with the statute of 1843, and especially

in accordance with the third section of that act, which was most repugnant to the law which entered into and became a part of the contract.

On January 19th, 1846, an act was approved repealing the third and fourth sections of the act of 1843, and "so much of the ninth section as required the officer to notify in writing." This act took effect on the first day of April, 1846. The *venditioni exponas* was issued on the 8th day of April, after the repealing act took effect. Hence, the sheriff had not even the semblance of authority to sell the property under those repealed sections. They were not only repugnant to the law of the contract, but they were also completely abrogated, so that they could impart no power to the sheriff, in any case, unless they had become a part of the contract which he was directed to enforce and satisfy.

Under the act of April 1st, 1846, which was in harmony with the law of the contract, and in force at the date of the execution and sale, the sheriff was authorized to give the purchasers "a certificate, showing the amount for which said real estate was sold, and that the purchaser will be entitled to a deed at the expiration of fifteen months from said sale, unless redeemed," &c.

Instead of delivering a certificate as required, and waiting fifteen months for the delivery of the deed, the sheriff arrogated to himself the power to give the deed at once, which it appears was placed upon record within two months after the sale, and over thirteen *months* before the purchasers could have been entitled to it. Every act of the sheriff under the *venditioni exponas*, shows that he was acting under the repealed valuation law; indeed the deed itself shows that the sale was conducted exclusively under that law. It therefore pronounces its own condemnation.

The *venditioni exponas* in like manner shows upon its return, that the sheriff had exercised powers under an inoperative and defunct statute. Under a statute not only inoperative but which, when in force, could not have been

enforced against the contract and judgment upon which it was issued.

We have repeatedly held, and would still decide that a *bona fide* purchaser, at a judicial sale, may repose with confidence upon a valid judgment, execution and deed. But in this case, two-thirds of the purchaser's platform is gone. Two of the three essential pillars to his title are without foundation, and powerless. They pronounce their own imbecility.

The record before us then establishes the fact, that at the time Burton purchased the property of Berry, it was subject to the judgment which Emerson, Shields & Co. held against Berry ; that they subsequently undertook to enforce the judgment by a levy and sale of the property, but that the levy and sale, were *prima facie*, conducted without authority of law, and therefore imparted no title to the purchaser. It follows consequently that the title to the lot, is still in Burton, subject only to the antecedent judgment lien of Emerson, Shield's & Co., and that the court below erred in finding for the defendants.

Judgment reversed.

*Smith, McKinlay,* and *Poor,* for appellants.

*Hempstead* and *Burt,* for appellees.